IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JAMES ALLEN LUTZ, ) | |
|     Petitioner, ) | Civil Action No. 7:21cv00272 |
| ) | |
| v. ) | |
| ) | By: Elizabeth K. Dillon |
| HAROLD W. CLARKE, DIRECTOR, ) |      United States District Judge |
|     Respondent. ) | |

MEMORANDUM OPINION

Jason Allen Lutz, a Virginia inmate proceeding *pro se*, has filed a petition and an amended petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging the judgment entered against him by the Shenandoah County Circuit Court on February 12, 2018. The respondent has filed a motion to dismiss, and Lutz has responded, making this matter ripe for disposition. For the reasons explained below, the court will grant the motion to dismiss.

I.    BACKGROUND

On September 14, 2016, a grand jury for Shenandoah County indicted Lutz on two charges of rape of a child below age 13, by a person over the age of 18, in violation of Virginia Code § 18.2-61(A)(iii), and one charge of aggravated sexual battery of a person below age 13, in violation of Virginia Code § 18.2-67.3, all occurring during May 2016. Defense counsel filed a motion to suppress allegedly involuntary statements made by Lutz to Investigator Stroop at Winchester Memorial Hospital on June 1, 2016, but the motion was denied. Hr'g Tr.[1], 25–26, March 20, 2017. The Commonwealth filed a motion to preclude the defense from mentioning during voir dire and during the guilt phase of the trial that two charges carried mandatory life sentences, and the trial court granted that motion. Trial Tr., 40, June 16, 2017. Originally

---

[1] Because official transcripts from the Circuit Court have not been received, despite several requests, the court has relied upon a photocopy of all transcripts provided by the Office of the Attorney General.

scheduled for trial on June 16, 2017, insufficient venire members remained available after voir dire, and the trial court declared a mistrial. *Id.* at 85. The trial commenced on October 16, 2017, with a different venire panel.

After the jurors were seated and sworn, the Commonwealth presented testimony from four witnesses, starting with Investigator Stroop from the Shenandoah County Sheriff's Office. Stroop was assigned to investigate an alleged sexual assault against G.W. He received a phone call from Lutz on May 31, 2016, indicating that Lutz wanted to tell his side of the story. Stroop, upon determining that Lutz had been drinking, said he would prefer to talk to him the next morning. The next morning, June 1, Stroop received a call from Winchester Medical Center, where Lutz had gone for psychiatric treatment for suicidal ideation, advising that Lutz was there and wanted to talk to him. He went to the hospital and read Lutz his *Miranda* rights,[2] which Lutz said he understood. Lutz told him that G.W. could not sleep and came into his bedroom on May 19, 2016, and he let her lay down to try to go to sleep. G.W. began cuddling up to him, and there was brief penetration until Lutz told her that they needed to stop. On May 28, 2016, she again came into the bedroom saying she could not sleep. Lutz said he got up and put clothes on, because he usually sleeps nude, and allowed G.W. to get under the covers to stay warm. He lay down on top of the covers. He said G.W. crawled out from under the covers, pulled his shorts down, got on top of him, and began "riding him." Trial Tr., 170, Oct. 16, 2017. Although he said he told her to stop, they had sexual intercourse at that time. While she was on top of him, G.W. said that she loved him, but he did not respond verbally. He said he pulled out before he

---

[2] In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court announced a rule requiring officers to advise suspects of their right to remain silent and right to have an attorney before conducting custodial interrogation. These rights have become known as *Miranda* rights.

2

ejaculated, and ejaculated into his hand, and G.W. left the room. The recorded interview was played for the jury. *Id.* at 168–176.

G.W., who was 14 at the time of the trial,[3] testified that Lutz, her stepfather, had touched her breast under her pajamas on May 5, 2016, when she was 12 years old. She said she also touched his penis and that he made her "suck his penis." *Id.* at 207. She did not remember how it started, she said, because it happened so many times that she had trouble remembering details and dates. She alleged that this had been occurring four times per week for four or five months. She also said that he had sex with her, his penis penetrating her vagina, on multiple occasions. Specifically, she testified that on May 28, 2016, they had sex again, in his bed. She said Lutz ejaculated into his hand and wiped it on one of his t-shirts. She indicated that Lutz would let her watch television in the bedroom, and if she could not sleep, she often went into his bedroom to lie down. Those were the occasions when he would initiate sex with her. When she said she did not want to, he said that he would kill himself if she told anyone. For a long time, she did not tell anyone, because she was afraid that he would kill himself or hurt one of her family members, especially her mother. Even though she saw a therapist weekly, she never told the therapist because she "didn't want to tell her." *Id.* at 218. Eventually, she got sick of Lutz telling her he loved her, so she told Jeremiah and her mother on May 30, 2016, which was her mother and Lutz' first anniversary. *Id.* at 203–218.

Jeremiah Lanham, a close friend of Lutz, had moved into the home with the family sometime in 2014 or 2015. Lanham remodeled the home, putting a bathroom downstairs that would be wheelchair accessible for Lutz' grandfather, who would be moving in. Then, Lanham stayed on at the home, living in the downstairs bedroom. He helped with the farm and with

---

[3] G.W. (and her mother) testified that G.W.'s birthdate was June 19, 2003. Trial Tr., 189, 204, Oct. 16, 2017.

3

house repairs. He considered Lutz to be like a brother, someone he could rely on for anything. He also became very close to Mrs. Lutz and her three daughters. The girls would sometimes talk to him about things about which they were not comfortable talking to their parents. On May 30, 2016, Lutz' first anniversary, G.W. was upset and crying and told him that she wished her mother had never married Lutz and indicated that something had happened with Lutz. Lanham told G.W. she needed to talk to her mother. *Id.* at 179–182. Mrs. Lutz packed some clothes and left the house, taking the girls with her. She returned the next day with Officer Stroop, while Lutz was at work, and got some more belongings. Lutz came home several hours later and told Lanham that he woke up one morning with G.W. on top of him, and "that happened." *Id.* at 183. Lutz was talking about killing himself, and Lanham told him to call Officer Stroop instead and "do the right thing." *Id.* at 184.

Whitney Lutz, G.W.'s mother, testified that she had spent her first anniversary at the swimming pool with her daughters, because it was Memorial Day and everyone was home from school. Plus, she had finally gotten off night shift; from February to May, she had been working 11:00 p.m. to 7:00 a.m. When they returned home from the pool, Lutz was outside grilling meat, and she went in to start the rest of dinner. G.W. came in, crying, with Jeremiah Lanham, and Lanham said that G.W. had said something that she needed to know. Lanham did not want to talk about it with her until the next day, when Lutz would be at work, but she told him she wanted to know right now. Lanham told her that G.W. said "that she wished you all had never gotten married." *Id.* at 190. Whitney looked at G.W., who said "mommy, he did stuff to me that I didn't like." *Id.* Based on the defense objection to hearsay, the trial court limited her testimony to the fact that G.W. made a sexual complaint and did not allow her to go into the details of the complaint. *Id.* at 191. Whitney testified that she took her daughters and left the home

4

immediately. She dropped her younger daughters off at her mother's house and took G.W. to Winchester Medical Center. The next day, May 31, Lutz called her from Jeremiah's phone, begging her to come home. She told him she wanted to hear from him what had happened with G.W., and he told her that in early May they fondled each other. Later in May they had "a very short encounter and that they had sex but for a short period of time" and then, on May 28th, that they had sex. *Id.* at 197. He had been afraid to tell her because he was afraid that she would leave. *Id.*

The defense made a *pro forma* motion to strike the evidence, which was denied, and then rested without offering any further evidence. The defense then renewed the motion to strike, which the court again denied. Following jury instructions, the jury deliberated 12 minutes and found Lutz guilty on all charges. *Id.* at 258.

Before the sentencing phase of the jury trial began, defense counsel argued that the jury was required to find that Lutz was over the age of 18 at the time of the offenses charged in the indictments before he could be subject to the mandatory minimum life sentence. *Id.* at 261–267. In response to this concern, the court agreed to grant the following jury instruction as requested by the defense:

> Upon consideration of all the evidence you have heard, if you believe the Commonwealth proved beyond a reasonable doubt that the defendant was over 18 years of age on the date of the offense, you shall fix the punishment at a term of imprisonment for life.
>
> Upon consideration of all the evidence you have heard, if you believe the Commonwealth did not prove beyond a reasonable doubt that the defendant was over 18 years of age on the date of the offense, you shall fix the punishment at a term of imprisonment for life or for a specific term, but not less than five (5) years.

*Id.* at 273–274. During the sentencing phase, the Commonwealth called Whitney Lutz and G.W. to testify about the effect of the events on G.W., who remained in therapy on a weekly basis.

While living with Lutz, G.W.'s grades had deteriorated badly and she had failed classes; by the time of the trial, she was making A's and acting more like herself. Whitney also testified that Lutz' birthdate was May 18, 1983. Investigator Stroop was also recalled, to testify about Lutz' birthdate, as he had done in his original testimony. *Id.* at 268–271. The defense introduced no evidence. *Id.* at 271–272.

After deliberating, the jury returned a recommended sentence of life on each rape charge and a verdict of 10 years for aggravated sexual battery. *Id.* at 281. The verdict form did not indicate whether the jury found that Lutz was over 18 at the time of the offenses.

Following preparation of a presentence report, the trial judge held a hearing on January 29, 2018. The defense objected to the court considering the jury's recommendation as a mandatory minimum life, arguing that it was not possible to determine whether the jury imposed life under the "life or . . . not less than five (5) years" instruction or under the mandatory life instruction, because the jury never made a factual finding that Lutz was over age 18 at the time of the offenses. Sent'g Tr., 290–296, Jan. 29, 2018. The court overruled the objection, finding that the jury had determined him to be over the age of 18 and that Lutz was subject to the mandatory minimum because the jury had convicted him of rape under indictments alleging that he was over the age of 18. *Id.* at 312–313. The probation officer who prepared the voluntary sentencing guidelines forms prepared them based upon mandatory minimum life sentences being required, but he testified on cross-examination that the guidelines range otherwise would have been between 4 years, 10 months and 12 years, 11 months, with a midpoint of 10 years, 9 months. *Id.* at 293–294. The court imposed the sentence recommended by the jury and entered its final judgment order on February 18, 2018.

Lutz's appeal to the Court of Appeals of Virginia was denied. *Lutz v. Commonwealth*, No. 0204184 (Va. Ct. App. May 8, 2019) (per curiam), aff'd by panel (Aug. 14, 2019). The Supreme Court of Virginia refused his further appeal in *Lutz v. Commonwealth*, No. 191185 (Va. April 30, 2020). Lutz subsequently filed a state petition for habeas corpus in the Supreme Court of Virginia, which was also denied. *Lutz v. Clarke*, No. 210455 (Va. Jan. 21, 2022). He filed a timely petition in this court, raising the following issues:

1. The trial court violated Lutz' constitutional right to a fair trial and to due process of law by granting Jury Instruction No. 11.
2. The trial court erred in failing to require the jury to find that he was over 18 years of age at the time of the crime as an element of the offense and in deciding that the jury had found him to be over age 18.
3. The sentence imposed, two life terms plus 10 years, was cruel and unusual, in violation of the Eighth Amendment to the Constitution.
4. The trial court erred by allowing the jury to sentence him, rather than retroactively applying the 2021 amendment to Virginia Code § 19.2-295.

II. DISCUSSION

**A. Standard of Review and Limitations on Federal Habeas**

A federal court may grant a petitioner habeas relief from a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Federal courts reviewing constitutional claims adjudicated on the merits in state court may grant relief on such a claim only if the state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2).

A federal district court reviewing a § 2254 petition is also limited by the separate but related doctrines of exhaustion, procedural default, and independent and adequate state law grounds. The statute of limitations, standard of review, and these procedural doctrines promote the principles of finality, comity, and federalism, recognizing a state's legitimate interests in enforcing its laws, preventing disruption of state judicial proceedings, and allowing states the first opportunity to address and correct alleged violations of a state prisoner's federal rights. *Coleman v. Thompson*, 501 U.S. 722, 732 (1991).

**B. Analysis of Issues**

    **1. Jury Instruction 11**

Two witnesses gave testimony that the Commonwealth referred to as "fresh complaint" testimony. First, Lanham testified that G.W. cried and pulled him to the side and talked to him; they did not get into much detail, but he told her to talk to her mother. Trial Tr., 179–182, Oct. 16, 2017. Next, Whitney Lutz testified that on May 30, 2016, her wedding anniversary, G.W. told her that "[Lutz] did stuff to me that I didn't like." *Id.* at 190. Defense counsel strenuously objected to further testimony on the topic from Mrs. Lutz on the grounds of hearsay and requested a limiting instruction that the statement made was offered to explain Mrs. Lutz's actions, not for the truth of the matter. *Id.* The trial court ruled that the fact of a recent complaint could be admitted as corroboration, but details would be inadmissible hearsay. *Id.* at 191. Defense counsel then noted that there was nothing to corroborate, because G.W. had not yet testified, and the court agreed. *Id.* at 192–193. After G.W.'s testimony, the Commonwealth

8

recalled Mrs. Lutz to testify that G.W. told her that something happened between her and Lutz, and that she left the house because of what G.W. said. *Id.* at 219.

Before jury instructions and closing argument, the Commonwealth offered Jury Instruction 11, which stated, "The fact that [G.W.] made complaint of the offense recently after commission of the rape is admissible, not as independent evidence of the rape, but for the purpose of corroborating the testimony of [G.W.]." Even though counsel had requested a limiting instruction at the time of the testimony, defense counsel objected to the instruction on the grounds that it "unnecessarily draws attention to only one aspect of the evidence before the jury and draws unnecessary attention and gives it undue weight." *Id.* at 224. Counsel added that he was not sure the evidence was "even introduced to be corroborative." *Id.* at 225. The trial court overruled the objection, finding that the instruction was a correct statement of the law and limited the purpose for which the jury could consider that evidence. *Id.* at 225–226.

On direct appeal, counsel argued that the instruction violated Lutz's constitutional right to a fair trial and due process because the Commonwealth did not introduce evidence that G.W. specifically made a complaint of a sexual offense to another person. In his § 2254 petition, he elaborates that no one testified about any details of a sexual complaint, saying only that G.W. said "something" had happened between her and Lutz. The Court of Appeals of Virginia[4] held that the argument raised on appeal was different from the argument made to the trial court, and thus the new argument to the trial court was procedurally defaulted under Rule 5A:18. When a state court expressly bases its dismissal of a claim on a state procedural rule, that rule provides

---

[4] Lutz also raised this issue on direct appeal to the Supreme Court of Virginia, which refused the appeal without a written opinion, making the opinion from the Court of Appeals the last reasoned state court opinion. A federal court on habeas review looks through to the last reasoned opinion in the state court. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) (holding that federal habeas court must presume that '[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground").

an independent and adequate state ground for the decision, and the claim is also considered defaulted on habeas review. *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998). The Fourth Circuit Court of Appeals has expressly recognized Rule 5A:18 as such a procedural rule. *Kent v. Kuplinski*, 702 F. App'x. 167, 169 (4th Cir. 2017) (unpublished) (noting that Rule 5A:18 is "virtually identical" to Rule 5:25, which has also been recognized as an independent and adequate state ground in *Weeks v. Angelone*, 176 F.3d 249, 270 (4th Cir. 1999).).

When a claim is defaulted in state court, a federal court will consider the claim only if the petitioner shows both cause for the default and actual prejudice from the claimed violation. *Coleman*, 501 U.S. at 750. This court need not address cause because petitioner cannot show prejudice. To show prejudice to overcome procedural default, a petitioner must show that the claimed violation worked to his "actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982). Lutz has not and cannot make such a showing in this case.

There is no prejudice because Lutz's interpretation of the fresh complaint doctrine is incorrect. As the trial court ruled, evidence of an out-of-court complaint made by an alleged rape victim is admissible, not as independent evidence of the offense, but as corroboration of the victim's testimony. Under the rule, "*only the fact that the complaint was made*, however, is admissible; neither the details of the alleged offense nor a description of the alleged assailant, as reported by the victim, may be admitted." *Cartera v. Commonwealth*, 248 S.E.2d 784, 786 (Va. 1978) (emphasis added). The issue is not whether her description of the sex act is consistent from one time to another, but whether she made the complaint that something happened in a timely fashion, to rebut the inference of recent fabrication. *Terry v. Commonwealth*, 484 S.E.2d

10

614, 616 (Va. 1997).[5] Accordingly, especially given counsel's repeated objection to hearsay, the witnesses were not permitted to give details about the fresh complaint, only that one was made.

Further, this issue is one of state evidence law, not federal constitutional law. Unless a statement is admitted in violation of the Confrontation Clause, the admissibility of a statement is based upon the state's rules of evidence. *Michigan v. Bryant*, 562 U.S. 344, 359 (2011). State law issues are not cognizable in federal habeas proceedings. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). Because there was testimony that a complaint was made and the instruction was a proper statement of the law, Lutz could not have prevailed on his objection to Jury Instruction 11. Because this was a state law issue, he would not have been entitled to have it ruled upon on habeas review. Therefore, he has not been prejudiced by procedural default of this issue, and the court will dismiss the claim.

### 2. Whether the jury determined that Lutz was over 18 at the time of the offenses

Lutz objected to the court's imposition of mandatory life sentences because the jury did not *necessarily* find that he was over 18 at the time of the offenses. The trial court overruled the objection, finding that the statute required imposition of the mandatory minimum life imprisonment if the victim is under thirteen and "*the indictment charges* that the defendant is eighteen or older," which the indictment did in this case. On appeal, Lutz stressed that any fact that increases the penalty for a crime, other than the fact of a prior conviction, must be submitted to the jury and proved beyond a reasonable doubt. *Apprendi v. New Jersey*, 530 U.S. 466 (2000). The appellate court held that the *Apprendi* argument was not raised in the trial court and, thus, was procedurally defaulted. Lutz argues that the substance of the argument, that the jury needed

---

[5] Defense counsel questioned G.W. about inconsistencies between her testimony at trial and her statements to the doctor at Winchester Medical Center on May 31, 2016, as well as other inconsistencies. *E.g.*, Trial Tr., 217.

to find that he was over the age of 18 before the enhanced sentence could apply, was made in the trial court, although *Apprendi* itself was not cited.

As previously discussed, when a petitioner has presented his issue to the state's highest court, a federal habeas court is limited in its review of the state's decision. The court cannot grant relief unless the state court's decision was an unreasonable application of federal law or based upon an unreasonable determination of the facts. 28 U.S.C. § 2254(b). An unreasonable decision is a higher threshold than an incorrect decision. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). A decision is unreasonable only if it is "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." *Harrington v. Richter*, 562 U.S. 362, 405 (2000). Even finding clear error fails to give proper deference to state courts by conflating error with unreasonableness. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). This demanding standard clearly gives the benefit of the doubt to the state court. *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). Under this standard, the court must accept the state's determination that his *Apprendi* argument was defaulted. Nonetheless, a federal habeas court can consider the procedurally defaulted claim if Lutz can establish cause and prejudice.

As with the prior issue, he cannot establish prejudice. The uncontradicted testimony in both the guilt phase and sentencing phase of the trial was that Lutz's birthdate is May 18, 1983, which would put him around 33 years old at the time of the offenses in May 2016, well over the age of 18 years. Trial Tr., 268–271, Oct. 16, 2017. Further, the nature of the case, being that Lutz was G.W.'s stepfather, having married G.W.'s mother, would suggest that he was over age 18. Any failure to submit this issue to the jury explicitly during the guilt phase of the trial was

12

therefore harmless. Because Lutz was not prejudiced by the procedural default of the issue, the court will dismiss this claim.

### 3. Whether two life sentences plus 10 years is cruel and unusual punishment

Lutz raised the constitutional claim that his sentence was cruel and unusual in his state habeas petition before the Supreme Court of Virginia. That court held the issue to be non-cognizable because the issue was not jurisdictional and could have and should have been raised at trial and on direct appeal. *Slayton v. Parrigan*, 205 S.E.2d 680, 682 (Va. 1974) (noting that "[a] petition for a writ of habeas corpus may not be employed as a substitute for an appeal"). Failure to raise issues on direct appeal, as required by *Slayton*, has long been recognized as an independent and adequate state ground for procedural default. *Mu'Min v. Pruett*, 125 F.3d 192, 194 (4th Cir. 1997). Because the claim was procedurally defaulted in the state court, this court can consider the issue only if Lutz can show cause for his default and actual prejudice from the alleged violation.

Lutz argues that the procedural default rules have been arbitrarily applied in an unreasonable manner in his case and that he has not had a full and fair opportunity to raise this claim. However, there is nothing erratic or inconsistent about the state court's application of the longstanding rule in *Slayton*. A state rule cannot be an "independent and adequate state ground" unless the federal court finds that the rule is firmly established and regularly applied by the state court. *Yeatts v. Angelone*, 166 F.3d 255, 263–64 (4th Cir. 1998). Undoubtedly, Virginia courts have relied on the rule in *Slayton* whenever a state petitioner raises a habeas claim that could have been raised in the trial and direct appeal process. While Lutz may not have fully argued this issue before the state court, he had the *opportunity* to do so, but neither he nor his attorney raised the issue at the proper time. That his attorney failed to raise the issue and that Lutz did not

13

know to do so are not considered adequate cause for procedural default. *United States v. Sosa*, 364 F.3d 507, 512 (4th Cir. 2004). Cause for procedural default requires the existence of some objective factor, external to the defense. *Coleman*, 501 U.S. at 756–57.

Nor has Lutz established prejudice, because the law does not support his claim that two life sentences plus 10 years is "cruel and unusual" punishment for two counts of raping a child under age 13 and one count of indecent liberties with that child. Outside the context of capital punishment, successful challenges to the proportionality of sentences have been exceedingly rare. *Ewing v. California*, 538 U.S. 11, 21 (2003). The Supreme Court has upheld a sentence of 25 years to life for shoplifting three golf clubs after two prior theft offenses (*Ewing*, 538 U.S. at 30–31), a life sentence for obtaining $120.75 by false pretenses after a prior forged check charge ($28.36) and a prior fraudulent use of a credit card ($80) (*Rummel v. Estelle*, 445 U.S. 263, 274 (1980)), and a 40-year sentence for distribution of nine ounces of marijuana (*Hutto v. Davis*, 454 U.S. 370, 373–74 (1982)). For rape, a violent crime, a life sentence (for each count) would not be considered "grossly disproportionate to the severity of the crime," as required before Eighth Amendment jurisprudence is invoked. *Ewing*, 538 U.S. at 21. Indeed, until relatively recently in this country's history, the death penalty was considered an appropriate penalty for rape. *Coker v. Georgia*, 433 U.S. 584, 598–99 (1977) (holding that the death penalty is disproportionate for rape, with two judges dissenting). Because his sentence is not cruel and unusual, Lutz has not been prejudiced by his default of this issue.

### 4. Retroactivity of Virginia Code § 19.2-295 (effective July 1, 2021)

The Supreme Court of Virginia addressed the issue of the retroactivity of Virginia Code § 19.2-295 in response to Lutz's habeas petition. On federal habeas review, this court cannot grant relief unless the state court's decision is contrary to, or an unreasonable application of, federal

law as determined by the United States Supreme Court. 28 U.S.C. § 2254(b). The state court found this claim to be without merit, finding that Code § 19.2-295, as amended in 2020 to become effective July 1, 2021, should not be applied retroactively because the legislature did not express an intent to make the law retroactive. Further, the court noted that procedural provisions of a statute that are in effect on the trial date apply to procedural issues. *Lutz*, No. 210455 at *2–3.

The state court decision does not conflict with federal law. The United States Supreme Court has noted that "the presumption against retroactive legislation is deeply rooted in our jurisprudence." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994). The presumption against retroactivity can be overcome in two ways: First, if the legislature explicitly states that the law is retroactive, or second, if the law affects only procedure, not substantive rights. *Montgomery v. Commonwealth*, 875 S.E.2d 101, 105 (Va. 2022). Procedural rules can be considered retroactive to the extent that these rules apply at the time the trial or other procedure takes place, even if the rules were different at the time the crime was committed. *Landgraf*, 511 U.S. at 275. Even when an amendment to a law is purely procedural, courts will not "alter the legal consequences of a procedure that has already taken place at the time of the statutory change." *Montgomery*, 875 S.E.2d at 106–07.

If Virginia Code § 19.2-295 had been amended effective July 1, 2017, then the new procedural rule would have applied to Lutz's October 2017 jury trial, even though the crime occurred in 2016, before the new statute took effect. That is not the case here. Lutz's trial was over, and he was sentenced in 2018, more than three years before the statute was amended. To apply the statute to a case that had already been tried and sentenced three years earlier would be impractical, to say the least, and would be contrary to the important goal of finality.

Lutz has argued that the statute is a "new rule" that should apply retroactively under *Teague v. Lane*, 489 U.S. 288 (1999). His argument is misplaced. *Teague* does not address the retroactivity of statutes; rather, the case involves the retroactivity of judicial interpretations of the Constitution by the Supreme Court. Even in *Teague*, retroactivity of judicial decisions on collateral review, in habeas cases, is not favored, but the issue in this case is retroactivity of a statute, not retroactivity of a Supreme Court decision.

Because the state court reasonably and properly applied the law in addressing this claim, the court will deny relief of claim 4.

### III. CONCLUSION

When issuing a final order adverse to a § 2254 petitioner, the court must issue or deny a certificate of appealability. Fed. R. Gov. § 2254 Cases 11(a). A certificate of appealability may only issue if the movant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The movant must show that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further. *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). In the context of a procedural ruling, the movant must demonstrate both that the dispositive procedural ruling is debatable and that the action states a debatable claim of the denial of a constitutional right. Lutz has not made such showings in this case.

For the reasons stated above, the court will grant the respondent's motion to dismiss, dismiss the petition for a writ of habeas corpus, and deny a certificate of appealability.

An appropriate order will be entered.

Entered: March 28, 2023.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge